CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 09 2010

JOHN F. CORCORAN, CLERK
BY: /s/ Saunor
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STACEY NICOLE KAUFFMAN, ) | |
|     Plaintiff, ) | Civil Action No. 7:09cv00482 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| B.J. WHEELER, et al., ) | By: Samuel G. Wilson |
|     Defendants. ) | United States District Judge |

Stacey Kauffman, a former inmate in the Virginia Department of Corrections ("VDOC") proceeding pro se and in forma pauperis, brings this action, under 42 U.S.C. § 1983, alleging that the defendants violated her rights to equal protection and due process under the Fourteenth Amendment by incorrectly categorizing Kauffman's conviction in calculating her security level classification.[1] As relief, Kauffman seeks a declaratory judgment, an injunction, nominal damages, and expenses incurred during the suit. Although she was incarcerated at the time she filed this action, Kauffman has notified the court that she has since been released from incarceration. Upon consideration of her complaint, the court finds that Kauffman's requests for declaratory and injunctive relief are moot, and that her allegations nevertheless fail to state a claim of constitutional magnitude. Therefore, the court dismisses the suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.

In 2007, Kauffman was found guilty of causing the death of another while racing, and sentenced to a prison term of ten years, seven of which were suspended. During her prison intake process, a Corrections Institution Rehabilitation Counselor ("Counselor") completed Kauffman's Initial Offender Classification Score Sheet and categorized Kauffman's conviction as "negligent homicide," which ultimately, when considered with other factors, resulted in a security level 3

---

[1] Kauffman's complaint also raised claims concerning the grooming policy at her Fluvanna Correctional Center; however, Kauffman voluntarily dismissed those claims.

classification.

Kauffman asserts that this security classification was in error. She believes that her conviction should have been categorized as "involuntary manslaughter," rather than "negligent homicide," and that this change would have resulted in a security level 2 classification. Kauffman states her security level 3 classification had "dire consequences . . . throughout [her] incarceration," including being "disqualified . . . from consideration for transfer to another facility, certain treatment programs, certain work assignments, work release, and electronic home monitoring."

During her time at Fluvanna Correctional Center, Kauffman raised her security classification concerns with numerous prison officials. In response to her initial complaints, the intake classification was reviewed and deemed correct. During her 2008 annual review, Kauffman scored points that would permit a security level 2 classification; however, prison officials determined that, due to the serious nature of Kauffman's crime, she would remain at a security level 3. Dissatisfied with this result, Kauffman continued to express her belief that her initial security classification was erroneous. She wrote a letter to the Chief of Operations, who responded and explained that Kauffman's offense fell under the category of "involuntary manslaughter," and that he would refer her case for review. However, he also explained that even if she was approved for a lower security level, her mental health code would nevertheless prevent her assignment to a lower security level facility.

In her complaint, Kauffman admits that there is "a mechanism for prison officials to exercise their discretion in classification of offenders" regardless of the reason for their incarceration. However, Kauffman draws a distinction between this discretionary process and her own allegedly erroneous classification, noting that "DOC policy provides a means by which prison officials could have . . . assign[ed] me to a Security Level 3/facility . . . without violating my rights."

## II.

As a preliminary matter, this court finds that Kauffman's claims for declaratory and injunctive relief are moot. In order to satisfy the "actual case or controversy" requirement of Article III of the Constitution, plaintiffs must demonstrate that they have a personal stake in the outcome of the case. When a plaintiff is no longer subject to the conditions of which she complains, claims for injunctive and declaratory generally become moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977). Standing to seek declaratory and injunctive relief requires a plaintiff to demonstrate continuing exposure to the actions of which she complains—past exposure is not enough. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Because Kauffman has been released from the custody of VDOC and is no longer subject to the conditions that form the basis of her complaint, the court finds her claims for declaratory and injunctive relief are moot.

## III.

Kauffman claims that her assignment to a security classification level 3 constituted a violation of her right to due process afforded under the Fourteenth Amendment. However, the court finds that Kauffman has no constitutionally protected liberty interest in a particular security classification and, therefore, she has failed to state a claim.

In order to prevail on a procedural due process claim, an inmate must first demonstrate that she was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Therefore, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). Consequently, the court finds that Kauffman's due process claim fails to establish a constitutional violation.

## IV.

Kauffman also alleges that the categorization of her conviction as a "negligent homicide," rather than as an "involuntary manslaughter" violated her right to equal protection. However, Kauffman has failed to establish the necessary elements of an equal protection claim and, therefore, the court dismisses her claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1982). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977) (requiring proof

of racially discriminatory intent or purpose to show an equal protection violation); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. Spaulding v. Dixon, et al., No. 90-7315, 1990 U.S. App. LEXIS 15560, *2 (4th Cir. Sept. 4, 1990); Chapman v. Reynolds, 378 F. Supp. 1137, 1139 (W.D. Va. July 12, 1974).

With regard to the categorization of her conviction in determining her security classification, Kauffman argues that the VDOC classification procedure fails to define "homicide" and thus, "fails to ensure that those prisoners who are similarly situated are similarly treated." However, Kauffman has not established an equal protection violation with respect to the categorization of her conviction.

Kauffman has not demonstrated that she was treated differently than other similarly situated inmates. Although she claims that she was treated differently than inmates who where convicted of a nonviolent offense that was categorized as "involuntary manslaughter," the court finds that she is not similarly situated to these inmates. Rather, she is similarly situated to other inmates who were convicted of causing the death of another while racing. Kauffman does not allege that other inmates who were convicted of the same offense were categorized differently than she in the prisoner intake process. Kauffman's assertion that there is merely a possibility of similarly situated inmates being treated differently is insufficient to state a constitutional claim. Furthermore, Kauffman does not demonstrate that the alleged unequal treatment was the result of intentional or purposeful discrimination. Accordingly, the court finds that Kauffman has failed to alleged an equal protection claim of constitutional magnitude.

## V.

Based on the foregoing, Kauffman's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

The Clerk is directed to send a certified copy of this Memorandum Opinion and accompanying Order to plaintiff.

**ENTER:** This 9th day of April, 2010.

                                                    United States District Judge